IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NICHOLAS STEPHEN HOLLIDAY                               PLAINTIFF

v.                                                CIVIL ACTION NO. 1:24-CV-82-SA-DAS

MONROE COUNTY, MISSISSIPPI and
MONROE COUNTY SHERIFF'S DEPARTMENT                DEFENDANTS

ORDER AND MEMORANDUM OPINION

On May 3, 2024, Nicholas Stephen Holliday filed his Complaint [1] against Monroe County, Mississippi and the Monroe County Sheriff's Department. He seeks to recover damages for a purported violation of his Fourth Amendment rights. Now before the Court is the Defendants' Motion for Judgment on the Pleadings [10]. The Court is prepared to rule.

*Relevant Background*

This lawsuit stems from the execution of a search warrant at a cannabis store in Aberdeen, Mississippi.

By way of background, Holliday is an Alderman for the City of Aberdeen. Since becoming an Alderman, Holliday has become friends with Maurice Howard, who previously served as Mayor of Aberdeen. Following Howard's tenure as Mayor, he opened a cannabis business named The Gas Station, which is located across from Aberdeen City Hall in downtown Aberdeen (in Monroe County).

As a friend of Howard's, Holliday frequently visited The Gas Station. In his Complaint [1], Holliday contends that he believed that the business was being operated legally pursuant to the Mississippi Hemp Cultivation Act of 2020, which legalized the sale of cannabis.

On December 12, 2023, Holliday was at The Gas Station visiting with Howard when the Monroe County Sheriff's Department entered the business to execute a search warrant. Describing

the events that transpired, Holliday alleges "the Sheriff's Department, under the command of the Sheriff, arrested Maurice Howard and an employee and removed them from the business's premises." [1] at p. 3-4. The Complaint [1] further alleges:

> As Howard was being escorted out of the business, his wife, Kenyatta Howard, commented, that if there were anything illegal in the business, it was probably brought there by Jason Hood. Jason Hood was a recently-employed individual who was located at the business at the time. Almost immediately following this comment, Sheriff Crook directed that Plaintiff be handcuffed. Upon information and belief, the Sheriff directed that Plaintiff be transported to the Monroe County Jail.

[1] at p. 4.

Holliday alleges that he was transported to the Monroe County Jail and held there for approximately five hours before a Sheriff's Deputy told him that he could leave. Holliday contends that he "was in the process of being released, when a Monroe County deputy, name unknown, directed [him] to sign a Miranda rights form, after which the deputy questioned [him] about whether [sic] his knowledge of the business being operated by Howard." *Id*. He alleges that he truthfully responded that he knew nothing about the business, other than it being a lawful cannabis business, and then the deputy permitted him to leave.

Holliday subsequently filed this lawsuit, alleging that the Defendants violated his Fourth Amendment rights. In his Complaint [1], Holliday contends that after the initiation of the lawsuit, he learned "that some of the product being sold [at the Gas Station] had been tested and was unlawful because it had over a .3 content of Tetrahydrocannabinol (THC)." [1] at p. 4-5. Nonetheless, for purposes of this case and his detainment on the date in question, Holliday avers that "[t]aking one into custody and holding him or her in a cell for five (5) hours is an unreasonable seizure of the person." *Id*. at p. 5.

2

Through the present Motion [10], the Defendants seek dismissal of Holliday's Complaint [1] in its entirety.

*Standard*

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings. FED. R. CIV. P. 12(c). "A Rule 12(c) motion may dispose of a case when there are no disputed material facts and the court can render a judgment on the merits based on the substance of the pleadings and any judicially noted facts." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).

"A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Salts v. Moore*, 107 F.Supp.2d 732, 735 (N.D. Miss. 2000). Accordingly, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *In re Katrina Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). Stated differently, "the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims." *Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). The Court will "accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff, but . . . [will] not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id*. (citing *Ferrer*, 484 F.3d at 780).

*Analysis and Discussion*

Before addressing the merits of Holliday's claim, the Court will address one preliminary matter. In his Complaint [1], Holliday asserts a claim against both the County and the Sheriff's

3

Department. The Defendants contend that the Sheriff's Department should be dismissed because it is not a separate legal entity subject to being sued.

This Court has reached that conclusion on multiple occasions. *See*, *e.g.*, *Higginbotham v. City of Louisville, Miss.*, 2019 WL 4934949, at *2 (N.D. Miss. Oct. 7, 2019) ("Whether the Sheriff's Department has the capacity to be sued must be determined according to Mississippi law. FED. R. CIV. P. 17(b)(3). It has been clear for some time under Mississippi law that a sheriff's department is not a separate legal entity that has the capacity to be sued.") (citations omitted); *Wigginton v. Washington Cnty., Miss.*, 2013 WL 1124402, at *1 (N.D. Miss. Mar. 18, 2013) ("Because the Washington County Sheriff's Department does not enjoy a separate legal existence, apart from Washington County, the case against that defendant shall be dismissed.").

Interestingly, as to the Sheriff's Department not being a separate legal entity subject to suit, Holliday's counsel states: "Plaintiff's counsel agrees." [14] at p. 5. Yet Holliday still requests that the Court decline to dismiss the Sheriff's Department based on the Fifth Circuit's 2001 decision in *Oden v. Oktibbeha Cnty, Miss.*, 246 F.3d 458, 464 n. 3 (5th Cir. 2001). However, since 2001, the Fifth Circuit has on multiple occasions held that a sheriff is the official law enforcement policymaker for a county, rendering the county (not the sheriff's department) liable for the official law enforcement policy decisions of the sheriff. *See*, *e.g.*, *Jauch v. Choctaw Cnty.*, 874 F.3d 425 (5th Cir. 2017); *Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 227-28 (5th Cir. 2008).

The Fifth Circuit has also held that "[t]he capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b)); *see also Hicks v. Tarrant Cnty. Sheriff's Dept.*, 352 F. App'x 876, 878 (5th Cir. 2009). Although the Mississippi Code

4

authorizes suit against "[e]very municipality of this state[,]" it does *not* authorize suit against a municipality's police or sheriff's department. MISS. CODE ANN. § 21-17-1(1); *Jackson v. City of Gulfport*, 2017 WL 651956, at *2 (S.D. Miss. Feb. 16, 2017). In other words, "a [sheriff's] department is not a separate legal entity that may be sued. Rather, it is an extension of the [municipality]." *Jackson*, 2017 WL 651956 at *2; *see also Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit); *Stovall v. City of Hattiesburg*, 2010 WL 1908313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department as a defendant because the City of Hattiesburg was the appropriate defendant).

In light of the extensive authorities indicating that the Monroe County Sheriff's Department is not a proper party, the Court hereby dismisses all claims asserted against it. To the extent the Motion [10] seeks dismissal of the Sheriff's Department, it is GRANTED.

Having resolved that preliminary matter, the Court turns to the crux of Holliday's lawsuit. As noted, he contends that his Fourth Amendment rights were violated when he was transported to the Monroe County Jail and kept there for a period of approximately five hours. His claim is properly analyzed under 42 U.S.C. § 1983.

"It is well-established that a [municipality] is not liable under § 1983 on the theory of respondeat superior." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). "Direct liability is instead required." *Blake v. Lambert*, 512 F. Supp. 3d 705, 708 (N.D. Miss. 2021) (quoting *Jauch*, 874 F.3d at 435) (additional citation omitted). "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a

5

constitutional violation whose 'moving force' is that policy (or custom)." *Id*. (quoting *Jauch*, 874 F.3d at 435; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (additional citation omitted). "Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Here, the County contends that Holliday has neither pled a constitutional violation nor an official custom or policy. The Court will address those issues separately.

I.  *Constitutional Violation*

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" *Carruthers v. Mississippi*, 2020 WL 7338066, at *2 (N.D. Miss. Dec. 14, 2020) (quoting U.S. CONST. AMEND. IV).

The County takes the position that no Fourth Amendment violation occurred because "officers executing a search warrant for contraband have the authority to detain the occupants of the premises while a proper search is conducted." [11] at p. 5 (citations omitted).

In large part, the County relies on the Supreme Court's decision in *Michigan v. Summers*, 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). In *Summers*, police officers approached a residence to execute a search warrant for narcotics when they encountered George Summers descending the front steps of the residence. *Id*. at 693, 101 S. Ct. 2587. The officers detained Summers while they searched the residence and, after locating narcotics "and ascertaining that [Summers] owned the house, the police arrested him, searched his person, and found in his coat pocket an envelope containing 8.5 grams of heroin." *Id*., 101 S. Ct. 2587. After being charged with possession of the heroin found in his pocket, Summers sought suppression on the basis that the

6

search violated his Fourth Amendment rights. *Id*. at 694, 101 S. Ct. 2587. The state trial court granted suppression, and the Michigan Supreme Court affirmed. *Id*., 101 S. Ct. 2587. On appeal, the United States Supreme Court reversed, concluding as follows:

> If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home. Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.

*Id*. at 704-05, 101 S. Ct. 2587.

The County relies on *Summers* for the proposition that officers executing a search warrant may detain the occupants of the premises while a proper search is conducted. In conjunction with that argument, the County emphasizes the United States Supreme Court's holding in *Muehler v. Mena*, that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." 544 U.S. 93, 98, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005).

Relying on these cases, the County contends that it possessed categorial authority to detain Holliday while the search of the premises—pursuant to a valid warrant—was ongoing.

For purposes of the present stage of this litigation, the Court rejects this argument. Holliday's contentions go much further than framed by the County. Holliday contends not only that Sheriff Crook directed that he be handcuffed but also that he be transported to the Monroe County Jail, where he was detained for five hours and questioned. This is a far-cry from *Summers*, where the police detained the occupant of a home on site while they executed a warrant at the occupant's own home. And although *Muehler* provides authority for an officer to detain an

7

individual incident to a search, the plaintiff in that case was detained on site while at the home where she had been located was being searched pursuant to a warrant. This is also rather distinguishable from Holliday's allegations here.

This Court finds more analogous the Fifth Circuit's decision in *Lincoln v. Barnes*, 855 F.3d 297 (5th Cir. 2017). There, a SWAT team fatally shot John Lincoln at his mother's residence. *Id*. at 299. John's daughter, Erin, was in the residence at the time and was a witness to the shooting. *Id*. Erin was later forcibly removed from the home and placed in handcuffs in the backseat of a police vehicle. *Id*. After being held in the police vehicle for approximately two hours, Erin was transported to the police station where she was interrogated for five hours and forced to write out a statement as to what she observed. *Id*. at 300. Erin was then permitted to leave. *Id*. She was never charged with a crime. *Id*.

Erin filed suit alleging that the "five-hour interrogation at the station, during which she was forced to write out a statement" was a violation of the Fourth Amendment. *Id*. The district court held that Erin had stated a plausible claim for relief and denied qualified immunity. *Id*. On appeal, the Fifth Circuit affirmed and, citing the United States Supreme Court's decision in *Dunaway v. New York*, held "police violate the Fourth Amendment when, absent probable cause or the individual's consent, they seize and transport a person to the police station and subject her to prolonged interrogation." *Id*. at 302 (citing *Dunaway v. New York*, 442 U.S. 200, 216, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979).

In the case at bar, Holliday avers that he was transported to the Monroe County Jail and held there for approximately five hours and then "[a]fter being questioned briefly" was released. [1] at p. 4. The Court is cognizant that Holliday does not contend that he was interrogated for five hours like the plaintiff in *Lincoln*, but he does allege that he was held for a substantial period of

8

time for no reason other than that he had been on the premises at the time the Sheriff's Department arrived to execute the warrant.

The County contends that *Lincoln* is distinguishable since Holliday was present on the scene of a business where illegal conduct was allegedly occurring, whereas Erin was simply a witness to a police shooting. However, the County has cited no authority indicating that that distinction should result in this case being resolved differently, and the Court sees no need to reach such a conclusion here—particularly at this early stage in the proceedings when the facts have not yet been developed through discovery. Furthermore, Holliday specifically alleges that he was detained and then questioned about his knowledge of the business. In other words, Holliday alleges that he was treated as a potential witness of illegal activity, like Erin in *Lincoln*.

In addition, the County apparently takes the position that Holliday was only detained during the execution of the search warrant. Thus, the County implicitly contends that the search itself took five hours. At this stage of the proceedings, no discovery has been conducted on that point, and the Court therefore cannot fully grapple with that issue. The Court therefore finds that any ruling on that matter would be premature.

For purposes of this stage of the proceedings, the Court finds that Holliday has alleged a constitutional violation.

II. *Official Custom or Policy*

As previously referenced, *Monell* liability cannot be imposed on a respondeat superior theory; instead, the allegedly unconstitutional conduct "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski*, 237 F.3d at 578. Typically, "[t]o proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must

9

contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted). In the usual case, this "involves allegations of an unconstitutional policy of general applicability, formally adopted by an official policy maker or informally established through long-standing practice or custom." *Howell v. Town of Ball*, 827 F.3d 512, 527 (5th Cir. 2016). But "[a] single unconstitutional action . . . may be sufficient in rare circumstances to impose municipal liability under *Monell*, if undertaken by the municipal officer or entity possessing 'final policymaking authority' for the action in question." *Id*. (quoting *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000)). This is because "even a single decision" by the final policymaker "constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986).

Holliday contends that this case is one of the rare circumstances where the County can be held liable for a single decision since the Sheriff himself, who possesses final policymaking authority, made the decision to detain him. The County does not dispute that it *could* be held liable for a single decision that the Sheriff made. But the County argues that the Complaint [1] fails to allege sufficient facts as to the Sheriff's conduct to impose liability here. The County avers as follows:

> First, Holliday's "upon information and belief" allegations are not the type that survive a motion to dismiss. This is because this information is not solely within the knowledge of the Defendant. Holliday was at the scene and apparently within earshot of Sheriff Crook, as he alleges that Sheriff Crook directed him to be handcuffed, and additionally, Holliday knew or could have inquired as to who directed him to be transported to the Monroe County Jail. In this context, the only allegations left as to the specific actions of Sheriff Crook are that he directed that Holliday be handcuffed while on the premises. This specific action, undisputedly, does not equate to a Fourth Amendment violation. As such, Holliday has failed to plausibly plead that a policymaker (Sheriff Crook) performed a specific act (handcuffing Holliday on the premises because he was

10

>present when a search warrant was being executed) that formed the basis of his Section 1983 claim.

[20] at p. 10-11.

The Court rejects this argument. As addressed at length previously herein, Holliday has alleged a constitutional violation. He also alleges that the constitutional violation occurred at the direction of the Monroe County Sheriff who, according to Holliday, specifically directed that Holliday be handcuffed and transported to the Monroe County Jail.

The County's attempt to draw attention to the "upon information and belief" language in the Complaint [1] is a non-starter. Discovery will assist in developing the underlying facts. Furthermore, to the extent that the County contends that the Sheriff specifically directing a Deputy to take a specific unconstitutional action (detaining Holliday) is different than the Sheriff himself specifically engaging in the unconstitutional action, the Court is likewise unpersuaded. The County cites no authority for that proposition, and the Court declines to adopt reasoning that would create such a slippery slope.

For purposes of this stage of the proceedings, the Court finds that Holliday has sufficiently alleged the existence of a single unconstitutional action undertaken by the final policymaker—the Sheriff.

*Conclusion*

The Motion [10] is GRANTED IN PART and DENIED IN PART. Holliday's claim against the Monroe County Sheriff's Department is hereby DISMISSED. The Clerk of Court shall terminate the Sheriff's Department as a defendant in this litigation. Holliday will be permitted to proceed on his claim against Monroe County.

The previously-imposed stay is hereby LIFTED. The Magistrate Judge will convene a conference in this case in due course.

SO ORDERED, this the 18th day of March, 2025.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE